(88 Misc. Rep. 83)

### BRULATOUR v. COMET FILM CO.

(Supreme Court, Appellate Term, First Department. December 17, 1914.)

CONTRACTS (§ 28*)—PARTIES—SUFFICIENCY OF EVIDENCE.

Evidence *held* insufficient to show that the contract on which defendant's counterclaim was based was made with the defendant.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 133–140, 1755, 1782–1784, 1785½, 1820, 1821; Dec. Dig. § 28.*]

Appeal from City Court of New York, Trial Term.

Action by Jules E. Brulatour against the Comet Film Company. Judgment for defendant, and plaintiff appeals. Reversed.

Argued November term, 1914, before LEHMAN, DELANY, and WHITAKER, JJ.

Graham & Stevenson, of New York City (Archibald Ewing Stevenson, of New York City, of counsel), for appellant.

Robert H. Elder, of New York City (Otho S. Bowling, of New York City, of counsel), for respondent.

WHITAKER, J. The action was brought by the plaintiff against the defendant to recover for goods sold and delivered, amounting to $770 and interest. The plaintiff's claim was admitted.

Defendant sets up a counterclaim for $1,500, and alleges in support thereof that about the year 1911 defendant entered into an agreement with plaintiff, whereby plaintiff agreed, in consideration of defendant's promise to co-operate with plaintiff and with certain other manufacturers of motion picture films in the production, manufac-

ture, and marketing of a certain series of motion pictures depicting current events, and known as the "Animated Weekly," that plaintiff would pay to defendant one-eleventh of the profit and income derived from such production and marketing; that defendant duly entered upon the performance of said agreement and duly performed the same on its part; that the said series of motion pictures was for a considerable time produced and marketed, from which plaintiff received large profits in excess of $16,500; that by reason thereof plaintiff became indebted to defendant in the sum of $1,500, which plaintiff refused to pay after the same had been demanded of him. The plaintiff replied to this counterclaim, denying it.

The questions tried before the trial court were as to whether there was such a contract and the amount of money which defendant was entitled to recover thereunder. The defendant conceded upon the trial that its share of the earnings of plaintiff under the contract was not over $1,000, and, the question as to whether there was a contract having been submitted to the jury, it returned a verdict for defendant for the difference between plaintiff's claim of $770 and the $1,000 claimed by defendant. The plaintiff appellant claims that this verdict was against the weight of evidence, and that there was a failure of proof of the counterclaim; also that the conduct of the defendant's attorney upon the trial was of such an improper character as to have prejudiced the jury.

The only witness for the defendant in support of the counterclaim was one William B. Gray, president of defendant, who testified that about 60 or 90 days after January 1, 1911, a meeting was held at the office of the Motion Picture Distributing & Sales Company, at which Mr. Gray, Mr. Brulatour, the plaintiff, McGee, Kessler, Ohs, Miles, and several other directors of the Motion Picture Distributing & Sales Company, and men not connected with the Sales Company were present; that a number of the manufacturers claimed that their sales had been affected because some other manufacturer had placed on the program of the Sales Company a picture of some topical subject which had interfered with their own sales; that Mr. Brulatour, who was the president of the Sales Company, stated that he would finance a topical motion picture weekly, to be called the "Animated Weekly," and that he would finance it for a percentage of its profits, and that all the other manufacturers were to assist in making topical pictures; that the plaintiff stated that he would finance the picture and pay to the manufacturers, who were at the meeting and who were connected with the Sales Company, a pro rata interest of one-tenth of the profits if they would assist in making topical pictures—that is, pictures of current events of public interest—and let plaintiff have the Animated Weekly to look after himself; that the manufacturers agreed to this, and also agreed that the plaintiff, Mr. Brulatour, was to get 25 per cent. The witness was not sure whether plaintiff was to get one-eleventh over and above this 25 per cent. This witness also testified that the Sales Company was to receive $50 per week for marketing the Animated Weekly. The witness also testified that in the spring or summer of 1911 he saw the plaintiff, and that the plaintiff admitted

that one-eleventh of the profits was between $1,000 and $1,100, and that Gray did not receive his share because the boys objected.

It appears from Gray's testimony for defendant that the stockholders of the Motion Picture Distributing & Sales Company were certain manufacturers of films, of which the defendant, Comet Film Company, was one. The Sales Company acted as sales agent and distributor for these different manufacturing companies, which owned all the shares of stock of the Sales Company. The profits, if any, were to be divided among the stockholders of the Sales Company. The meeting at which this alleged contract was entered into was a meeting of the directors of the Sales Company, and was held either about February or March 1, 1911. This is substantially all the testimony in support of the alleged counterclaim.

The plaintiff denies absolutely the contract as alleged by the witness Gray, and is corroborated by Herbert L. Miles. The plaintiff's testimony concerning the starting of the Animated Weekly, and also the testimony of Herbert L. Miles, secretary of Motion Picture Distributing & Sales Company, is:

That there was a meeting of the directors of the Sales Company on February 1, 1912, at which the witness Gray was present as one of the board of directors and as president of the defendant, Comet Film Company, one of the stockholders of the Sales Company. That at such meeting, the following resolution was passed:

"Resolved, that any current topical event can be put out exclusively either as a special or a regular release, by any manufacturer who first registers his purpose of taking such event with Mr. MacIntyre, the secretary of the board, and, if released as a special, the Sales Company to charge two cents per foot commission."

The matter of the Sales Company releasing a film of topical events was then taken up, and on motion, duly made, seconded, and carried, it was

"Resolved, that the Sales Company put out as soon as practicable a topical weekly, to be released on Sundays, this topical weekly to be conducted on the same lines as the Pathe Weekly. Arrangements are hereby made with Mr. J. E. Brulatour to manage, finance, and take charge of this weekly on his own responsibility and financial risk for the Sales Company; it being understood that Mr. Brulatour is to retain 25 per cent. of the profits for his compensation, the remaining 75 per cent. to be paid to the Sales Company."

On motion, duly made, seconded, and carried, it was

"Resolved, that the name of the weekly topical release be the Sales Company 'Animated Weekly.'"

That a subsequent meeting was held on March 5, 1912, at which the following business was transacted:

"Mr. Brulatour informed the members of the board that he had received a proposition from the Gaumont Company in regard to their furnishing negative for the Sales Company's Animated Weekly.

"The board expressed its favor, and authorized Mr. Brulatour to complete the arrangements with the Gaumont Company to supply their current events for our Animated Weekly at a price not to exceed eight cents (8¢) per foot, and the agreement to be cancelable by giving 60 days' notice on either side."

That at a meeting of the board of directors held on September 18, 1912, the following resolution was passed:

"Resolved, that in connection with the settlement of the Animated Weekly account between Mr. Jules E. Brulatour and the Sales Company, the outstanding account of the Morgan Lithograph Company for posters be assumed and hereafter paid by the Sales Company, regardless of the terms of settlement between Mr. Jules E. Brulatour and the Sales Company.

"Resolved, that the Morgan Lithograph Company be instructed to transfer

the account of the Animated Weekly posters to the Universal Film Manufacturing Company, and that the Sales Company cede, transfer, and assign forever to the Universal Film Manufacturing Company its rights to the name Animated Weekly, and upon receipt of a communication by the Sales Company from the Morgan Lithographing Company to the effect that said company is willing to transfer the account to Universal Film Manufacturing Company, the Sales Company shall pay $550 on the outstanding account of the Morgan Lithograph Company for Animated Weekly posters, and finally definitely transfer the account and all Animated Weekly posters to the Universal Film Manufacturing Company.

"Resolved, that the report and statements of Mr. Jules E. Brulatour relative to the Animated Weekly be accepted, and the check from Mr. Brulatour be accepted in full settlement, and Mr. Jules E. Brulatour be relieved of further liability.

"Resolved, to declare a dividend of $125 on each share of stock issued by this company, but that the dividend accruing to the Comet Film Company and the New York Motion Picture Company, respectively, be credited to their accounts, and that the cashier of the Sales Company, Mr. J. R. Miles, be so instructed."

The evidence shows that there was a full accounting between the plaintiff and the Sales Company, and that plaintiff paid to said Sales Company all the earnings or profits of the Animated Weekly. The evidence in support of the defendant's counterclaim and the alleged contract is weak and of a very uncertain and unsatisfactory character, and even if uncontradicted would hardly be sufficient to sustain and prove the alleged contract.

The facts attempted to be established by defendant's witness' testimony are very improbable. It is not easily explained how, at a meeting of the board of directors of the Sales Company, with outsiders attending, the alleged contract was made with the individual stockholders of the Sales Company. The evidence does not show that all the stockholders of the Sales Company were present, or were notified to be present. The board of directors of the Sales Company was present, and we think the record amply shows that the contract was made with the Sales Company, as is testified to by plaintiff. The credibility of the defendant's witness is seriously impaired by his cross-examination.

The version of the entire transaction, as given by the plaintiff and the witness, Miles, concerning the starting of the Animated Weekly, is reasonable, probable, and is sustained by the minutes of the meeting of the Sales Company and the other documentary evidence in the case; and an examination of the record plainly discloses that the contract was between plaintiff and the Sales Company and that the profits belonged to the Sales Company, and should have been paid by it to the stockholders. It is not probable that defendant would for two years continue to purchase from plaintiff and pay for goods, if plaintiff was indebted to defendant and had refused to pay.

In view of all the testimony and the circumstances as disclosed by the record in the case and the character of the witnesses for plaintiff it is difficult to account for the verdict of the jury unless the jury was prejudiced. It may be that the attempt of the defendant's attorney to cast odium and discredit both upon the witness, Miles, and indirectly upon the plaintiff himself, may have worked such a prejudice. The questions asked by defendant's attorney of the witness, Miles, were

highly improper and tended to cast an unjust reflection upon him. This improper conduct upon the part of defendant's counsel of itself would, we think, be sufficient to warrant a reversal of the judgment. We think the judgment should be set aside as against the weight of and contrary to the evidence.

Judgment reversed, and a new trial granted, with costs to appellant to abide the event. All concur.